United States District Court
Southern District of Texas

**ENTERED**

June 10, 2016

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IQ PRODUCTS COMPANY; | § | |
| CSA LIMITED, INC., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-12-1652 |
| | § | |
| WD-40 COMPANY, | § | |
| | § | |
| Defendant, | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] are Defendant's Motion to Confirm Arbitration Award (Doc. 66) and Plaintiff's Motion to Vacate (Doc. 75). The court has considered the motions, the responses, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendant's motion be **GRANTED** and Plaintiff's motion be **DENIED**.

### I.  Case Background

Plaintiffs IQ Products Company ("IQ Products") and CSA Limited, Inc., ("CSA") brought this suit for damages and declaratory relief against Defendant, alleging breach of contract and multiple tort claims.

### A.  Factual Background

---

[1]      This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  Docket Entry No. 23.

IQ Products[2] is a Houston-based producer, manufacturer, packager, and distributer of aerosol products.[3] Defendant is a manufacturer of lubricant products with its principal place of business in San Diego, California.[4]

In February 1996, the parties entered into the Manufacturing License and Product Purchase Agreement ("1996 Agreement").[5] The 1996 Agreement contained an arbitration provision, which stated, in part:

> Any controversy or claim arising out of, or related to this Agreement, or any modification or extension thereof, shall be settled by arbitration in accordance with the Arbitration Rules of the American Arbitration Association, in San Diego, California, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.[6]

Later in 1996, Defendant converted the propellant used in its products from a propane/butane formulation to a $CO_2$-based composition.[7]

---

[2] In August 1992, IQ Holdings, Inc., acquired CSA and assumed its long-standing role as packager of Defendant's products. Doc. 7, Pls.' 1st Am. Compl., p. 11. In May 2008, CSA and IQ Products switched names, and CSA assumed agreements that had been entered between IQ Products and Defendant. Id. at p. 12. IQ Products became "the operating face of the company" that "moved forward in the long-term supply relationship" with Defendant. Id. Both IQ Products and CSA are named as Plaintiffs in this action "in order to afford complete relief among the parties." Id.

[3] Id. at pp. 1, 4.

[4] Id. at pp. 1, 4.

[5] See id. at p. 10-11; Doc. 20-1, Ex. 1 to Def.'s Reply & Am. Mot. to Compel Arbitration, Mfg. License & Prod. Purchase Agreement, p. 1.

[6] Doc. 20-1, Ex. 1 to Def.'s Reply & Am. Mot. to Compel Arbitration, Mfg. License & Prod. Purchase Agreement, p. 12.

[7] Doc. 7, Pls.' 1st Am. Compl., p. 6.

In response to Defendant's February 2011 Request for Proposal concerning an ongoing supply relationship, IQ Products submitted a bid.[8]  On July 9, 2011, Defendant announced the award of business to IQ Products.[9]  IQ Products subsequently performed an engineering audit and "uncovered defects in design," of which it informed Defendant.[10]  Defendant chose not to implement any of IQ Products' recommendations.[11]  IQ Products also informed Defendant that its discovery needed to be reported by Defendant to government agencies, but Defendant did not agree.[12]

As a result of this impasse, IQ Products requested that Defendant indemnify IQ Products against all losses, fines, penalties, and other damages arising from the alleged design defect.[13]  Defendant indicated that it would end the business relationship and rebid the production of Defendant's products to another packager.[14]  On May 22, 2012, Defendant terminated the relationship and discontinued further purchase orders.[15]

**B.  <u>Procedural Background</u>**

---

[8]      <u>Id.</u> at p. 13.

[9]      <u>Id.</u>

[10]     <u>Id.</u> at p. 16.

[11]     <u>Id.</u>

[12]     <u>See</u> <u>id.</u> at pp. 18-19.

[13]     <u>Id.</u> at p. 19.

[14]     <u>Id.</u> at pp. 19-20.

[15]     <u>Id.</u> at p. 20.

On May 31, 2012, Plaintiff IQ Products filed this action, asserting multiple causes of action in breach of contract and tort, seeking declaratory relief, actual damages, punitive damages and attorneys' fees.[16]  IQ Products amended its complaint on July 16, 2012, adding CSA as a plaintiff and responding to Defendant's counterclaims.[17]

On July 30, 2012, Defendant responded to Plaintiffs' live complaint by filing an answer that included counterclaims and a motion to compel arbitration.[18]  In August 2012, the court heard arguments on Defendant's motion to compel arbitration.[19]

On December 19, 2012, this court issued a memorandum and recommendation recommending that Defendant's motion to compel arbitration be granted and that the case be stayed pending an arbitrator's decision on the issue of arbitrability.[20]  Plaintiff objected to the memorandum and recommendation, but on January 10, 2013, the memorandum and recommendation was adopted in full and this case was stayed pending arbitration.[21]

On April 30, 2013, Plaintiffs filed a request for an initial

---

[16]    Id. pp. 19-39.

[17]    See Doc. 7, Pls.' 1st Am. Compl.

[18]    See Doc. 21, Def.'s 1st Am. Answer & Countercls. Subject to its R. 12 Mots. & Mot. to Compel Arbitration.

[19]    See Doc. 33, Min. Entry Dated Aug. 20, 2012.

[20]    See Doc. 61, Mem. & Recommendation dated Dec. 19, 2012.

[21]    See Doc. 62, Objs. to Mem. & Recommendation; Doc. 63, Order Adopting Mem. & Recommendation dated Jan. 10, 2013.

ruling on arbitrability.[22]  On July 8, 2013, after an oral hearing,
a single arbitrator determined that all parties' claims were
arbitrable.[23]  IQ Products contested this result and filed a motion
for a written opinion regarding arbitrability on November 15,
2013.[24]  A three-arbitrator panel denied IQ Products' motion, but
stated that it reserved the right to consider the arbitrators'
jurisdiction in their ultimate determination.[25]

    The parties proceeded to arbitration hearings on the merits,
and evidence was presented by both parties regarding arbitrability.
After two phases of hearings, the panel issued an interim award on
May 14, 2015.[26]  The interim award summarized the prior arbitrator's
oral hearing and decision and agreed that the entire dispute was
arbitrable.[27]  On November 6, 2015, the panel issued its final
arbitration award.[28]

    On December 4, 2015, Defendant moved to confirm the panel's

---

[22]    See Doc. 79-6, Ex. 5 to Def.'s Resp. to Pl.'s Mot. to Vacate, Pls. Req. for an Initial Ruling on Arbitrability.

[23]    See Doc. 66-10, Ex. 9 to Def.'s Pet. to Confirm Arbitration, Order re: Arbitrability p. 3.

[24]    See Doc. 79-7, Ex. 6 to Def.'s Resp. to Pl.'s Mot. to Vacate, Pls. Mot. for Reasoned Op. on Arbitrability.

[25]    See Doc. 66-12, Ex. 11 to Def.'s Pet. to Confirm Arbitration, Order dated Jan. 22, 2014.

[26]    See Doc. 66-3, Ex. 2 to Def.'s Pet. to Confirm Arbitration, Interim Award dated May 14, 2015 p. 54.

[27]    See id. pp. 14-18.

[28]    See Doc. 66-2, Ex. 1 to Def.'s Pet. to Confirm Arbitration, Final Arbitration Award dated Nov. 6, 2015 p. 8.

arbitration award.[29]  IQ Products filed a response to Defendant's motion and motion to vacate the arbitration award on January 13, 2016, arguing that the arbitration panel lacked jurisdiction to arbitrate its claims.[30]  Defendant filed a motion in response to IQ Products' motion to vacate on January 26, 2016.[31]

## II.  Legal Standard

The Federal Arbitration Act (the "FAA") provides that, "within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected."  9 U.S.C. § 9.  Under the FAA, four circumstances exist under which an arbitration agreement may be vacated: (1) the award was procured by corruption, fraud, or undue means; (2) there was evident partiality or corruption in the arbitrators; (3) the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party have been prejudiced; or (4) the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and

---

[29]    See Doc. 66-2, Ex. 1 to Def.'s Pet. to Confirm Arbitration, Final Arbitration Award p. 8.

[30]    See Doc. 75, Pl.'s Mot. to Vacate and Resp. in Opp'n to Def.'s Pet. to Confirm Arbitration.

[31]    See Doc. 79, Def.'s Resp. to Pl.'s Mot. to Vacate.

6

definite award upon the subject matter submitted was not made. 9 U.S.C. § 10.

The party challenging an arbitrator's award carries a heavy burden. BNSF Ry. Co. v. Alstom Transp., Inc., 777 F.3d 785, 788 (5th Cir. 2015). The standard of review of an arbitrator's decision is very narrow. Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 510 (2001) (labor arbitration decision could not be overturned even if "serious error" shown); Brabham v. AG Edwards & Sons, Inc., 376 F.3d 377, 380 (5th Cir. 2004). "When an arbitration award is at issue, the district court does not sit as an appellate court or a court of review, to decide the merits of the grievance or the correctness of the award." Weinberg v. Silber, 140 F. Supp. 2d 712, 718 (N.D. Tex. 2001), aff'd, 57 F. App'x 211 (5th Cir. 2003). It is not enough for a party to show that the arbitrator committed an error, or even a serious error. Oxford Health Plans LLC v. Sutter, ___ U.S. ___, 133 S. Ct. 2064, 2068 (2013). When evaluating a contract dispute, the sole question for review is whether the arbitrator actually interpreted the contract, not whether he construed it correctly. Id.

### III. Analysis

IQ Products argues that the arbitrators exceeded their powers by determining that all claims were arbitrable. IQ Products contends that this court's December 19, 2012 memorandum and recommendation incorrectly determined that the assertion of

arbitrability was not "wholly groundless" and must reconsider the issue in the wake of a recent Fifth Circuit decision.  Defendant responds that the court's prior recommendation was correct and that Plaintiffs cannot overcome the heavy burden necessary to vacate an award under the FAA.

The court first notes that its express orders granted arbitrators the authority to determine the gateway issue of arbitrability. First one arbiter and then a three-judge arbitral panel complied with the court's order and determined that all issues, including arbitrability, were arbitrable.  Because this court specifically compelled the parties to arbitration for this determination, the arbitrators did not exceed their powers under Section 10(a)(4) of the FAA by finding the entire dispute was arbitrable.

IQ Products instead argues that this court must reconsider its December 2012 recommendation based on its interpretation of the Fifth Circuit's holding in Douglas v. Regions Bank, 757 F.3d 460 (5th Cir. 2014).  In Douglas, the Fifth Circuit considered whether a gateway arbitration provision applied when the provision was within an agreement to open a checking account.  Years later, the plaintiff filed suit against the bank's successor for negligence and conversion subsequent to alleged embezzlement from her account by a third party.  See id. at 461.  The court affirmed the district court's holding that the arbitrability provision did not apply, but

8

on different grounds, focusing its discussion on whether the arbitration agreement was "relevant to the dispute at hand."  Id. at 462.

The court cited favorably to the Federal Circuit's two-part test to determine whether a dispute is arbitrable because of the presence of a delegation provision.  Id. at 464 (citing Agere Sys., Inc. v. Samsung Elecs. Co., 560 F.3d 337 (5th Cir. 2009)) (noting that Agere implicitly relied on the Federal Circuit's two-part Qualcomm, Inc. test).  The test involves determining: "(1) did the parties 'unmistakably intend to delegate the power to decide arbitrability to an arbiter,' and if so, (2) is the assertion of arbitrability 'wholly groundless.'"  Id. at 463 (quoting Agere, 560 F.3d at 337).  The court found that the arbitration provision in Douglas was wholly groundless because the circumstances of the suit had "nothing to do with" the gateway arbitration provision connected to opening a checking account that had been closed a year later.  Id. at 464.

IQ Products contends that its 1996 Agreement is similarly irrelevant to this case and the dispute should not have been sent to arbitration.  Specifically, it argues that the products covered by the 1996 Agreement were limited and did not include those products that led to its dispute with Defendant.  It maintains that although this court previously stated that Defendant's assertion of arbitrability was not "wholly groundless," that the court must now

9

reconsider the issue following the Fifth Circuit's decision in Douglas.

Analyzing the "wholly groundless" standard in the wake of Douglas, this court has stated that an assertion of arbitrability "is not wholly groundless" if "there is a plausible and legitimate argument that the arbitration covers the present dispute, and, on the other hand, a plausible and legitimate argument that it does not." W.L. Doggett LLC v. Paychex, Inc., 92 F. Supp. 593, 599 (S.D. Tex. 2015).

Here, although IQ Products maintains that the arbitration agreement did not apply to this dispute, Defendant has consistently argued that the provision controlled all the parties' claims. Because a plausible and legitimate argument that the gateway arbitration applied existed, this court properly considered that the assertion was not wholly groundless. This court's prior recommendation recognized that the parties disputed the issue of arbitrability, and, citing the Fifth Circuit's decision in Agere, found that the provision was not wholly groundless.[32] The fact that multiple arbitrators decided the issue of arbitrability in Defendant's favor provides supplemental evidence that there was a legitimate argument in favor of arbitrability. The Douglas case does not present good cause for this court to reconsider its

---

[32]   Doc. 61, Mem. & Recommendation dated Dec. 19, 2012 p. 13 (citing Agere, 560 F.3d at 340).

previous recommendation and order, and the court accordingly will not do so.

IQ Products has not made a legal argument that either the single arbitrator who issued a ruling on arbitrability or the final arbitral panel exceeded their authority or otherwise violated any of the other limited circumstances necessary for a court to vacate an arbitration award. <u>See</u> 9 U.S.C. § 10. IQ Products was given an opportunity to present its evidence related to the arbitrator's jurisdiction to multiple arbitrators, and the arbitrators found that they retained jurisdiction over the issue of arbitrability. IQ Products' complaint that the arbitrators reached a result contrary to its position does not provide grounds for vacating the arbitration award. Because Plaintiffs have not met their burden, the court **RECOMMENDS** that Defendant's Motion to Confirm its Arbitration Award be **GRANTED**.

## IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendant's Motion to Confirm its Arbitration Award be **GRANTED** and Plaintiffs' Motion to Vacate be **DENIED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Rule 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an

11

aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.   Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 10th day of June, 2016.

_____
U.S. MAGISTRATE JUDGE

12