United States District Court
Southern District of Texas
**ENTERED**
August 25, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IQ PRODUCTS COMPANY, <br> CSA LIMITED, INC., <br> *Plaintiffs*, <br> v. <br> WD-40 COMPANY, <br> *Defendant*. | § § § § § § § § § § § | CIVIL ACTION H-12-1652 |

### ORDER ADOPTING MEMORANDUM & RECOMMENDATION

Pending before the court is the Magistrate Judge's Memorandum & Recommendation (the "M&R"), recommending that defendant WD-40 Company's ("WD-40") motion to confirm arbitration award (Dkt. 66) be granted and plaintiff IQ Products Company's ("IQ") motion to vacate arbitration award (Dkt. 75) be denied. Dkt. 84. The court has reviewed the M&R, the objections to the M&R, the response, the reply, and the applicable law. For the reasons set forth below, the court OVERRULES IQ's objections and ADOPTS the M&R.

### I. BACKGROUND

On May 31, 2012, IQ and CSA Limited, Inc. ("CSA") brought this suit against WD-40, alleging breach of contract and multiple tort claims. Dkt. 7. IQ is a Houston-based producer, manufacturer, packager, and distributor of aerosol products. *Id.* at 4. WD-40 is a manufacturer of lubricant products with its principal place of business in San Diego, California. *Id.* Over the past 50 years, CSA (beginning in 1960 and continuing through 1992), and then IQ Products (from 1992 through May 2012) have collectively produced, packaged, and distributed from the Houston plant

the well-known line of lubricant products sold worldwide under the trademarked brand "WD-40."[1] *Id*. at 1.

On June 16, 1993, IQ and WD-40 entered into a Defense and Indemnity Agreement (the "Indemnity Agreement"). *Id*. at 2. In February of 1996, the parties entered into a Manufacturing License and Product Agreement (the "1996 Agreement"). Dkt. 20, Ex.1. The 1996 Agreement contained an arbitration provision, which stated, in part:

> Any controversy or claim arising out of, or related to this Agreement, or any modification or extension thereof, shall be settled by arbitration in accordance with the Arbitration Rules of the American Arbitration Association, in San Diego, California, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

*Id.* at 12. The 1996 Agreement is the only agreement between the parties that contains an arbitration provision. Dkt. 85 at 6.

Later in 1996, WD-40 converted the propellant used in its products from a propane/butane formulation to a carbon dioxide ("$CO_2$") based composition. Dkt. 7 at 6. Months later, IQ began producing and packaging WD-40's $CO_2$-based product. *See* Dkt. 79, Ex. 13.

In February 2011, IQ submitted a bid in response to WD-40's request for proposal concerning an ongoing supply relationship. Dkt. 7 at 13. On July 9, 2011, WD-40 announced the award of business to IQ. *Id.* Later in 2011, IQ conducted an engineering audit of WD-40's manufacturing specifications and allegedly "uncovered defects in design," of which it informed WD-40. *Id.* at 16.

---

[1] In August 1992, IQ Holdings, Inc., acquired CSA and assumed its role as packager of WD-40's products. Dkt. 7 at 11. In May 2008, CSA and IQ switched names, and CSA assumed agreements that had been entered into between IQ and WD-40. *Id*. at 12. IQ became "the operating face of the company" that "moved forward in the long-term supply relationship" with WD-40. *Id*. Both IQ and CSA are named as Plaintiffs in this action "in order to afford complete relief among the parties." *Id*.

WD-40 chose not to implement any of IQ's design recommendations. *Id.* IQ also informed WD-40 that its discovery needed to be reported to government agencies, but WD-40 disagreed. *Id*. at 18–19.

As a result of the parties' disagreement, IQ invoked the Indemnity Agreement, requesting that WD-40 indemnify IQ against all losses, fines, penalties, and other damages arising from the alleged design defect. *Id.* at 19. WD-40 responded by indicating that it would end the business relationship and rebid the production of its products to another repackager. *Id.* On May 22, 2012, WD-40 terminated the relationship and discontinued further purchase orders. *Id.* at 20.

On May 31, 2012, IQ filed this action, asserting multiple causes of action in breach of contract and tort. Dkt. 7. On July, 30, 2012, WD-40 filed an answer that included counterclaims and a motion to compel arbitration. Dkt. 21. After hearing arguments on WD-40's motion to compel arbitration, on December 19, 2012, the Magistrate Judge issued a memorandum and recommendation (the "2012 M&R") recommending that WD-40's motion to compel arbitration be granted and that the case be stayed pending the arbitrator's decision on the issue of arbitrability. Dkt. 61. The 2012 M&R, which this court adopted over IQ's objections, granted arbitrators the authority to determine the gateway issue of arbitrability. *Id*. at 13; Dkt. 64 (order adopting 2012 M&R).

On July 8, 2013, an independent arbitrator determined that both parties' claims were arbitrable. Dkt. 66, Ex. 10 at 3. On January 22, 2014, a three-arbitrator panel denied IQ's motion requesting a reasoned opinion and redetermination of the arbitrability issues. Dkt. 66, Ex. 12. The panel stated that it would allow the parties to present further evidence regarding the arbitrability issue during the hearing on the merits and reserved the right to consider the arbitrators' jurisdiction in their ultimate decision. *Id*. The parties proceeded to arbitration hearings on the merits, and evidence was presented by both parties regarding arbitrability. On May 14, 2015, the panel issued an interim

award, which provided a detailed discussion on the arbitrability issue and concluded that all of the parties' claims were arbitrable. Dkt. 66, Ex. 3 at 15–24. On November 6, 2015, the panel issued its final arbitration award in favor of WD-40. Dkt. 66, Ex. 2.

On December 4, 2015, WD-40 moved to confirm the panel's arbitration award. Dkt. 66. On January 13, 2016, IQ filed a response to the motion and a motion to vacate the arbitration award, arguing that the arbitration panel lacked jurisdiction to arbitrate its claims. Dkt. 75. WD-40 filed a response on January 26, 2016. Dkt. 79. On June 10, 2016, the Magistrate Judge issued the pending M&R recommending that WD-40's motion to confirm the arbitration award be granted and IQ's motion to vacate be denied. Dkt. 84. On June 24, 2016, IQ filed objections to the M&R. Dkt. 85. On July 8, 2016, WD-40 filed a response to the objections (Dkt. 88), to which IQ filed a reply (Dkt. 89).

## II. LEGAL STANDARDS

### A. Review of a Magistrate Judge's Recommendation

For dispositive matters, the court "determine[s] de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.* "When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), Advisory Comm. Note (1983). For nondispositive matters, the court may set aside the magistrate's order only to the extent that it is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a).

### B. Motion to Vacate Arbitration Award

The Federal Arbitration Act (the "FAA") provides that, "within one year after the award is

made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected." 9 U.S.C. § 9. Under the FAA, four circumstances exist under which an arbitration award may be vacated: (1) the award was procured by corruption, fraud, or undue means; (2) there was evident partiality or corruption in the arbitrators; (3) the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party have been prejudiced; or (4) the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. *Id*. § 10.

      The party challenging an arbitrator's award carries a heavy burden. *BNSF Ry. Co. v. Alstom Transp., Inc.*, 777 F.3d 785, 788 (5th Cir. 2015). The standard of review of an arbitrator's decision is very narrow. *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 510, 121 S. Ct. 1724 (2001) (holding that labor arbitration decision could not be overturned even if "serious error" shown); *Brabham v. AG Edwards & Sons, Inc.*, 376 F.3d 377, 380 (5th Cir. 2004). "When an arbitration award is at issue, the district court does not sit as an appellate court or a court of review, to decide the merits of the grievance or the correctness of the award." *Weinberg v. Silber*, 140 F. Supp. 2d 712, 718 (N.D. Tex. 2001), *aff'd*, 57 F. App'x 211 (5th Cir. 2003). It is not enough for a party to show that the arbitrator committed an error, or even a serious error. *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 (2013). When evaluating a contract dispute, the sole question for review is whether the arbitrator actually interpreted the contract, not whether he construed it correctly. *Id*.

Moreover, the Supreme Court has ruled that, once a court determines that the parties agreed to submit arbitrability for determination in arbitration, the arbitrator's decision on that issue is subject to the same deference as a decision on the merits of the dispute:

> Did the parties agree to submit the arbitrability question itself to arbitration? If so, then the court's standard for reviewing the arbitrator's decision about that matter should not differ from the standard courts apply when they review any other matter that parties have agreed to arbitrate. *See AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (parties may agree to arbitrate arbitrability); *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 583, n. 7, 80 S.Ct. 1347, 1353, n. 7, 4 L.Ed.2d 1409 (1960) (same). That is to say, the court should give **considerable leeway** to the arbitrator, setting aside his or her decision only in certain **narrow circumstances**. *See, e.g.*, 9 U.S.C. § 10.

*First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S. Ct. 1920 (1995) (emphasis added).

The test for determining whether the parties agreed to submit the arbitrability issue to arbitration is well established. First, an agreement to have the arbitral tribunal decide arbitrability must be "clear and unmistakable." *Douglas v. Regions Bank*, 757 F.3d 460, 462 (5th Cir. 2014); *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012); *Agere Sys., Inc. v. Samsung Elecs. Co.*, 560 F.3d 337, 339 (5th Cir. 2009). Second, if there is a clear and unmistakable intent, then the court must next determine if the assertion of arbitration is "wholly groundless." *Id*. The assertion of arbitrability "is not wholly groundless" if "there is a plausible and legitimate argument that the arbitration agreement covers the present dispute, and, on the other hand, a plausible and legitimate argument that it does not." *W.L. Doggett LLC v. Paychex, Inc.*, 92 F. Supp. 3d 593, 599 (S.D. Tex. 2015) (Hittner, J.) (citing *Douglas*, 757 F.3d at 463–64).

### III.  OBJECTIONS

IQ asserts that the arbitration award must be vacated because the arbitrators decided claims involving carbon-dioxide ("$CO_2$") propelled products that IQ never agreed to arbitrate. Dkt. 85 at

6. IQ argues that the Magistrate Judge failed to properly apply the Fifth Circuit's test for determining whether WD-40's assertion of arbitration was "wholly groundless" and therefore erred in granting arbitrators the authority to determine the gateway issue of arbitrability. *Id*. at 16–19. Specifically, IQ contends that (1) the *Douglas* decision, which was issued after the 2012 M&R, requires this court to conduct a more thorough analysis in evaluating whether WD-40's argument in favor of compelling arbitration under the 1996 Agreement was "wholly groundless"; (2) the M&R improperly relied on the arbitrators' decisions; and (3) the Magistrate Judge failed to address several of IQ's arguments *against* compelling arbitration. Dkt. 85. For these reasons, IQ requests that the court vacate the arbitration award because "the arbitrators exceeded their powers, or so imperfectly executed them" under the FAA. *See* 9 U.S.C. § 10(a)(4). The court will address each objection in turn.

    **A. Whether the Assertion of Arbitrability is "Wholly Groundless" under *Douglas***

   IQ argues that this court must reconsider its initial order compelling arbitration in light of the Fifth Circuit's 2014 *Douglas* decision. Dkt. 85 at 17. However, *Douglas* did not alter or expand on the law that the Magistrate Judge originally applied in the 2012 M&R. Dkt. 61. In *Douglas*, the Fifth Circuit formally adopted the two step test that was cited by the Fifth Circuit in *Agere*. 757 F.3d at 463 (citing *Agere*, 560 F.3d 337). The test asks two questions: "'(1) did the parties unmistakably intend to delegate the power to decide arbitrability to an arbitrator, and if so, (2) is the assertion of arbitrability wholly groundless.'" *Id.* (citing *Agere*, 560 F.3d at 340). In the 2012 M&R, the Magistrate Judge applied this two step test and determined that (1) the parties clearly and unmistakably intended to delegate the power to decide arbitrability to an arbitrator by incorporating the arbitration rules of the American Arbitration Association ("AAA rules"); and (2) the assertion of arbitrability is *not* wholly groundless. Dkt. 61 at 13.

7

IQ does not challenge the Magistrate Judge's determination that there was a "clear and unmistakable" intent to have arbitrability decided in arbitration. *See* Dkt. 75 at 6 ("The Magistrate Judge's report in this case, adopted by this Court, considered that issue at length and IQ does not challenge that aspect of the decision."). Rather, IQ contests the Magistrate Judge's determination on the "wholly groundless" prong. Specifically, IQ complains that "the Magistrate Judge made the conclusory statement that 'Defendant's assertion of arbitrability is not wholly groundless'" and "the intervening *Douglas* decision now requires a full analysis of this issue." Dkt. 85 at 6.

In the pending M&R, the Magistrate Judge considered and rejected IQ's claim that the intervening *Douglas* decision requires reconsideration of the court's initial "wholly groundless" analysis. After carefully reviewing *Douglas*, the court agrees that reconsideration is not warranted.

In *Douglas*, the plaintiff opened a checking account with a bank in 2002 and closed it less than one year later. 757 F.3d at 461. The plaintiff's agreement with the bank included an arbitration clause, with a delegation provision, that required arbitration of any disputes in any way relating to or arising from her agreement with the bank or her checking account. *Id*. at 462. In 2007, the plaintiff settled a car accident claim, but her funds were embezzled by her lawyer, who held the funds *in his account* at the successor to the Plaintiff's bank. *Id*. at 461. The plaintiff sued the bank for failing to prevent the fraud and the district court denied the bank's motion to compel arbitration. *Id*. The Fifth Circuit affirmed based on its finding that the assertion of arbitrability was "wholly groundless" because the events leading up to the plaintiff's claims against her bank—"a car accident, a settlement, and embezzlement of the funds through an account that a third party held with the bank— [had] nothing to do with [the plaintiff's] checking account opened years earlier for only a brief time." *Id*. at 464. The *Douglas* court rejected the argument that "every case involving an arbitration agreement with a delegation provision must, with no exceptions, be submitted for such

8

gateway arbitration." *Id*. at 463. The court noted that it would be impractical to require the plaintiff "to go to the arbitrator, who would flatly tell her that this claim is not within the scope of the completely unrelated arbitration agreement she signed many years earlier when opening a checking account and that she must actually go to federal court after all." *Id*. Therefore, because it was obvious that there was absolutely no connection between the plaintiff's claim and the arbitration agreement, the court determined that the bank's assertion of arbitrability was "wholly groundless." *Id*. at 464 (noting that the bank's "only theory that its claim of arbitrability [was] not wholly groundless [was] that there was a delegation provision"). However, in so ruling, the Fifth Circuit acknowledged that "the wholly groundless inquiry is supposed to be limited, **a court performing the inquiry may simply conclude that there is a legitimate argument** that [the] arbitration clause covers the present dispute, and, on the other hand, that it does not and, on that basis, leave [t]he resolution of [those] plausible arguments . . . for the arbitrator." *Id*. at 463 (emphasis added) (citations and internal quotation marks omitted); *see also Paychex*, 92 F. Supp. 3d at 599 (noting that the wholly groundless inquiry is supposed to be limited, and that "the resolution of the plausible and legitimate arguments regarding arbitrability must be reserved for the arbitrator").

This case presents vastly different circumstances than *Douglas*. Here, both sides appear to have plausible arguments regarding whether the 1996 Agreement covers the parties' claims. IQ complains that the M&R "does not examine or construe the 1996 Contract to any extent—in fact, it fails even to mention the relevant contractual language." Dkt. 89 at 6–7. However, both the 2012 M&R and the pending M&R cite to the relevant provisions contained in the 1996 Agreement. Dkt. 84 at 2; Dkt. 61 at 3. Moreover, both M&Rs discuss the parties' disagreement regarding whether the arbitration provision contained in the 1996 Agreement covers the $CO_2$-based product. Dkt. 84 at 2; Dkt. 61 at 3. In determining that the assertion of arbitrability was *not* wholly

groundless, the Magistrate Judge noted in the 2012 M&R that there were complicated issues surrounding the gateway arbitrability issue, including "whether the arbitration agreement is still in effect, whether the parties' disputes fall within the scope of the arbitration agreement, and whether the arbitration agreement remains valid." Dkt. 61 at 12.  The Magistrate Judge concluded that WD-40 had plausible arguments in favor of compelling arbitration and then properly reserved these issues for the arbitrators. Dkt. 61 at 12–13.  Accordingly, IQ's objections related to the Magistrate Judge's "wholly groundless" analysis are OVERRULED.

### B.    The M&R Improperly Relied on the Arbitrators' Decisions

IQ argues that in concluding that the arbitration panel was empowered to decide the issue of arbitrability, the M&R improperly relied on the fact that multiple arbitrators decided the issue of arbitrability in favor of WD-40. Dkt. 85 at 6–7.  However, as discussed above, the Magistrate Judge independently determined the arbitrability issue in her 2012 M&R prior to any of the arbitrators' decisions. Dkt. 61.  The pending M&R summarizes the Magistrate Judge's initial reasoning for concluding that WD-40's assertion of arbitrability was not wholly groundless and then correctly rejects IQ's claim that the *Douglas* decision requires reconsideration. Dkt. 84 at 7–10.  As further support for her initial ruling, the Magistrate Judge points out that "[t]he fact that multiple arbitrators decided the issue of arbitrability in [WD-40's] favor provides *supplemental* evidence that there was a legitimate argument in favor of arbitrability." Dkt. 84 at 10 (emphasis added).  Accordingly, IQ's objection that the M&R improperly relied on the arbitrators' decisions is OVERRULED.

### C.    IQ's Remaining Objections

IQ's remaining objections relate to the Magistrate Judge's alleged failure to address several of IQ's arguments *against* compelling arbitration. Dkt. 85.  However, under *Douglas*, once a court determines that there is a plausible argument in favor of arbitration, as the court did here, the court

must leave it to the arbitrator to resolve the parties' competing arguments regarding arbitrability. Because the court finds that the Magistrate Judge properly submitted the arbitrability issue to arbitration, the court need not address IQ's remaining objections. Consistent with this court's order, one arbitrator and a three-arbitrator panel determined that all issues, including arbitrability, were arbitrable. Dkt. 66, Exs. 3,10. The panel rejected each of IQ's arguments against arbitrabilty and examined at length why the parties' claims arose from and relate to the 1996 Agreement. Dkt. 66, Ex. 3 at 15–23. Moreover, IQ's primary objection—that the 1996 Agreement applied only to propane/butane products and not to $CO_2$ products—has already been considered and rejected by this court. *See* Dkt. 62 (IQ's objections to the 2012 M&R); Dkt. 64 (order adopting 2012 M&R in full). Therefore, all of IQ's objections to the M&R are OVERRULED.

## IV. CONCLUSION

IQ's objections (Dkt. 85) are OVERRULED, and the M&R (Dkt. 84) is ADOPTED in full. Accordingly, WD-40's motion to confirm the arbitration award (Dkt. 66) is GRANTED and IQ's motion to vacate (Dkt. 75) is DENIED. A final judgment will issue consistent with this opinion.

Signed at Houston, Texas on August 25, 2016.

_____
Gray H. Miller
United States District Judge

11